**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TIMOTHY THORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| NEW CASTLE COUNTY, a governmental | ) | |
| entity, JOHN DOE #1, in his individual | ) | |
| capacity and as a New Castle Count Police | ) | |
| Officer, JOHN DOE #2, in his individual | ) | |
| capacity and as a New Castle Count Police | ) | |
| Officer, and JOHN DOE #3, in his individual | ) | |
| capacity and as a New Castle Count Police | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### The Parties

1.      Plaintiff Timothy Thorn ("Thorn") is a white male and a Delaware resident.  He resides, and at the relevant time, did reside at 1603 Cherry Street, Wilmington, Delaware.

2.      Defendant New Castle County ("NCC") is a county of the State of Delaware duly organized, existing, and operating under and pursuant to the applicable laws of the State of Delaware.  NCC is a governmental entity.

3.      NCC operates the New Castle County Police Department ("NCCPD"), a law enforcement agency.  At all times relevant, NCC was the employer of John Doe #1, John Doe #2, and John Doe #3 and had responsibility for hiring, training, supervision, disciplining, and retention of police officers employed by NCC.

1

4.      Defendant John Doe #1, a white male, was, at all times relevant, a police officer acting under color of state law as an agent or employee of the NCCPD located at 3601 North DuPont Highway, New Castle, Delaware.

5.      Defendant John Doe #2, a white male, was, at all times relevant, a police officer acting under color of state law as an agent or employee of the NCCPD located at 3601 North DuPont Highway, New Castle, Delaware.

6.      Defendant John Doe #3, a black male, was, at all times relevant, a police officer acting under color of state law as an agent or employee of the NCCPD located at 3601 North DuPont Highway, New Castle, Delaware.

## Jurisdiction & Venue

7.      This is a civil action for damages arising under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

8.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

9.      Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

10.     Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

11.     Pursuant to New Castle County Code § 1.01.011, counsel for Thorn sent a letter via certified mail, return receipt requested to Wilson Davis, Esquire, the county attorney for New Castle County, putting the County on notice of Thorn's claims.  The letter was mailed on July 2, 2020.  There are two stamps indicating it was received at the New Castle County Government

2

Center. Although the two stamps are on top of each other, one indicates it was received on July 6, 2020, and the other indicates it was received on July 7, 2020.

### The Afternoon of July 15, 2019

12.     Thorn's residence is in the middle of the block on Cherry Street in Wilmington, Delaware. The houses on the block are relatively close together. Demographically, the neighborhood is approximately 90% white and 10% black. The demographically black portions of the neighborhood are mostly together. In other words, within the neighborhood, there are demographically white sections and demographically black sections.

13.     On July 15, 2019, between 1:30 p.m. and 2:00 p.m., Thorn was on the second floor of his residence working in his office. The front door of his house was closed and locked. The screen doors to the basement door and back door of his residence were both closed but unlocked.

14.     While working in his office, Thorn had music playing at a low volume. He suddenly heard voices that he thought were outside of his residence. He looked out his window. He realized they were male voices coming from the living room on the first floor of his residence.

15.     Thorn went out into the hallway on the second floor of his residence and saw red laser dots coming up from the steps from the first floor. Thorn realized these were from the laser scope of a firearm.

16.     Thorn walked down the hallway towards the stairs slowly, yelling that he was coming out with his hands up.

17.     When he reached the corner where the steps to the first floor join the second floor hallway, Thorn extended his hands around the corner first and then came around the corner with his hands up.

18.     John Doe #1, in police uniform and acting under color of state law, was at the bottom of the steps and had his firearm pointed up the steps. Thorn came around the corner and John Doe #1's firearm was then pointed at him. When the officer saw Thorn, the officer returned his firearm to his holster. The officer had a look on his face as though he had made a major mistake.

19.     Thorn came down the stairs. In addition to John Doe #1, John Doe #2, in police uniform and acting under color of state law, was also in Thorn's living room on the first floor of his residence.

20.     Thorn asked John Doe #1 and John Doe #2 what was going on and why they were there. Neither John Doe #1 nor John Doe #2 answered him. But John Doe #2 stated they needed to search Thorn's basement. Thorn asked if they had a warrant. John Doe #1 and John Doe #2 turned and left Thorn's residence without saying anything.

21.     John Doe #1 and John Doe #2 did not have a warrant to enter Thorn's residence on July 15, 2019.

22.     As John Doe #1 and John Doe #2 walked down Thorn's driveway, he yelled after them: "What the fuck are you doing in my house?" and "Why the fuck are you pointing guns at me?" John Doe #1 and John Doe #2 only responded by saying, "thank you, thank you."

23.     John Doe #1 and John Doe #2 met up in the street outside of Thorn's residence with John Doe #3 who had a German Shepherd with him. Thorn began yelling at John Doe #3 as well about their intrusion into his residence. John Doe #3 told Thorn "to come out into the fucking street". Thorn interpreted this to mean John Doe #3 was going to fight Thorn if he came out into the street. Thorn did not leave his property.

24.    While John Doe #3 was taunting Thorn, John Doe #1 walked past John Doe #3 and leaned in and said something to John Doe #3.  John Doe #3's taunting of Thorn immediately ceased, and the three officers turned and walked up Cherry Street toward Holly Oak Road.

25.    John Doe #1, John Doe #2, and John Doe #3 walked up Cherry Street without entering anyone else's residence or property.

### The Aftermath

26.    Thorn called the NCCPD and spoke to a Mr. Dunning ("Dunning").  Initially, Dunning denied any NCCPD officers had been in Thorn's residence.  Dunning, however, finally admitted that the NCCPD officers had, in fact, been in Thorn's residence.  In total, Thorn had two conversations with Dunning.

27.    Through either or both of The News Journal online and/or his conversations with Dunning, Thorn learned that the police had been chasing a suspect in or around his neighborhood. The suspect was black and was apprehended three or four blocks from Thorn's residence.

28.    Thorn does not know why John Doe #1 and John Doe #2 entered his residence on July 15, 2019.  From Cherry Street, it would not have been possible for the officers to see the open screen door on the back door through which the officers entered his residence.  From Cherry Street, it would have been possible but not easy for the officers to see the open screen door on the basement door.

29.    The New Castle County Police Department had responded to Thorn's residence before this incident, so they were aware of who resided at that residence.

### NCCPD History of Fourth Amendment Violations

30. New Castle County has been accused of violating the Fourth Amendment rights of its citizens on a number of occasions.  Some of the following are examples:

5

a. In *Couden, et al. v. Duffy, et al.*,[1] members of the NCCPD were accused of violating the Fourth Amendment rights (illegal search, illegal seizure, and excessive force) of a family when the officers mistook the family's son for a burglar during a neighborhood stakeout.  The case was filed on April 10, 2003.  Upon information and belief, the case resulted in verdict for the defendants following a trial in December 2011.

b. In *Gladney, et al. v. New Castle County, et al.*,[2] members of the NCCPD were accused of violating the Fourth Amendment rights (illegal search, illegal seizure, illegal arrest, and a *Monell* claim) when they raided the wrong home.  The case was filed on June 15, 2012, and a Stipulation of Dismissal was filed on October 25, 2012.

c. In *Barbour v. New Castle County, et al.*,[3] members of the NCCPD were accused of excessive force when responding to a call for a medical emergency.  The case was filed on October 27, 2017, and a Stipulation of Dismissal was filed on July 25, 2019.

d. In *Brown v. Evans, et al.*,[4] a citizen brought claims for excessive force, unlawful detention and arrest, malicious prosecution, and a *Monell* claim against members of the NCCPD and New Castle County.  The case was filed May 25, 2021, and appears to be ongoing.

---

[1] These allegations are based upon the docket, C.A. No. 1:03-cv-00369-MPT in the U.S. District Court for the District of Delaware and multiple reported decisions.

[2] These allegations are based upon the docket, C.A. No. 1:12-cv-00727-SRF in the U.S. District Court for the District of Delaware.

[3] These allegations are based upon the docket, C.A. No. 1:17-cv-01525-RDM in the U.S. District Court for the District of Delaware.

[4] These allegations are based upon the docket, C.A. No. 1:21-cv-00651-MN in the U.S. District Court for the District of Delaware.

**Damages**

31. As a result of the intentional and/or reckless actions of Defendants John Doe #1, John Doe #2, John Doe #3, and the policies, practices, and/or customs of NCC, Thorn sustained the following damages:

    a. Fear and apprehension for his physical safety on July 15, 2019, when John Doe #1 had a gun pointed at Thorn;

    b. Fear and apprehension for his physical safety on July 15, 2019, when John Doe #3 taunted Thorn to "to come out into the fucking street";

    c. Deprivation of his rights secured by the Constitutions and laws of the United States of America and the State of Delaware;

    d. Mental and emotional stress and anxiety; and

    e. Inconvenience to and disruption of his life.

**COUNT I – EXCESSIVE FORCE**

**(Against John Doe #1 and John Doe #2 in Their Individual Capacities)**

32.      Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

33.      At all times relevant, John Doe #1 and John Doe #2 were acting under color of state law.

34.      John Doe #1 and John Doe #2 illegally entered Thorn's residence.

35.      Once inside, John Doe #1 drew his firearm and pointed it up the stairs.

36.      Thorn heard their voices and recognized the laser dot coming up the stairs as one belonging to a firearm.

37.     Thorn was frightened and upset to see that a weapon was pointed up his stairs. When Thorn came around the corner to the stairs, he was frightened and upset to see the weapon pointed at him.

38.     Had Thorn not realized what caused the laser beam or heard the officers voices, he could have been shot and/or killed.

39.     Thorn realized he was not free to exit his own home without raising his hands up, announcing that he was coming down the stairs with his hands up, and submitting to the physical force and authority demonstrated by the officers.

40.     New Castle County police officers had previously reported to the Thorn residence.

41.     Thorn did not present any threat the safety of the officers or anyone else.

42.     Neither John Doe #1 nor John Doe #2 had probable cause or a reasonable articulable suspicion to draw a weapon and point it upstairs where Thorn was located.

43.     John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly used excessive force against Thorn in his residence.

44.     Thorn had a right to be free of excessive force.  John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly violated Thorn's rights under the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution as secured by 42 U.S.C. §1983.

45.     As a result of these Constitutional violations, Thorn suffered the damages identified in Paragraph 31.

## COUNT II – EXCESSIVE FORCE

### (Against John Doe #3 in His Individual Capacity)

46.     Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

47.     At all times relevant, John Doe #3 was acting under color of state law.

48.     When Thorn came out of his house following John Doe #1 and John Doe #2 down his driveway, he was reasonably and understandably upset.

49.     Neither John Doe #1 nor John Doe #2 would explain why they were in his residence.  So Thorn began questioning John Doe #3 as to what was going on.

50.     Despite Thorn's animated state, he was did not physically confront John Doe #3 nor did he threaten John Doe #3.  Thorn remained on his property.

51.     John Doe #3 nonetheless taunted Thorn to come out into the "fucking street" as if inviting Thorn to fight John Doe #3.

52.     John Doe #3 knowingly, intentionally, and/or recklessly used excessive force against Thorn in his residence.

53.     Thorn had a right to be free of excessive force.  John Doe #3 knowingly, intentionally, and/or recklessly violated Thorn's rights under the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution as secured by 42 U.S.C. §1983.

54.     As a result of these Constitutional violations, Thorn suffered the damages identified in Paragraph 31.

## COUNT III – VIOLATION OF RIGHT TO BE FREE OF ILLEGAL SEARCH

### (Against John Doe #1 and John Doe #2 in Their Individual Capacities)

55.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

56.    At all times relevant, John Doe #1 and John Doe #2 were acting under color of state law.

57.    John Doe #1 and John Doe #2 entered Thorn's residence through either the back door which was not visible from the street or the basement door which was difficult to view from the street.  Both of these doors were closed.

58.    Upon information and belief, John Doe #1 and John Doe #2 had to cross onto Thorn's property to see the doors and determine whether they were open.

59.    Once they entered Thorn's property and accessed the doors, they further entered Thorn's residence through a closed door.

60.    John Doe #1 and John Doe #2 did not have a warrant to search Thorn's residence.

61.    Neither John Doe #1 nor John Doe #2 had probable cause or a reasonable articulable suspicion to search Thorn's residence.

62.    No exigent circumstances reasonably existed to justify John Doe #1 and John Doe #2 entering Thorn's property and, subsequently, his residence.

63.    John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly entered and/or searched Thorn's residence.

64.    Thorn had a right to be free of an illegal search.  John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly violated Thorn's rights under the Fourth Amendment

10

to the United States Constitution and Article I, § 6 of the Delaware Constitution as secured by 42 U.S.C. §1983.

65.    As a result of these Constitutional violations, Thorn suffered the damages identified in Paragraph 31.

### COUNT IV – VIOLATION OF RIGHT TO BE FREE OF ILLEGAL SEIZURE

### (Against John Doe #1 and John Doe #2 in Their Individual Capacities)

66.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

67.    At all times relevant, John Doe #1 and John Doe #2 were acting under color of state law.

68.    John Doe #1 and John Doe #2 entered Thorn's residence through either the back door which was not visible from the street or the basement door which was difficult to view from the street.  Both of these doors were closed.

69.    Upon information and belief, John Doe #1 and John Doe #2 had to cross onto Thorn's property to see the doors and determine whether they were open.

70.    Once they entered Thorn's property and accessed the doors, they further entered Thorn's residence through a closed door.

71.    Once inside, John Doe #1 drew his firearm and pointed it up the stairs.

72.    Thorn heard their voices and recognized the laser dot coming up the stairs as one belonging to a firearm.

73.    Thorn realized he was not free to exit his own home without raising his hands up, announcing that he was coming down the stairs with his hands up, and submitting to the physical force and authority demonstrated by the officers.

74.    John Doe #1 and John Doe #2 did not have a warrant to seize Thorn.

75.    Neither John Doe #1 nor John Doe #2 had probable cause or a reasonable articulable suspicion to seize Thorn.

76.    No exigent circumstances reasonably existed to justify John Doe #1 and John Doe #2 seizing Thorn.

77.    John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly seized Thorn.

78.    Thorn had a right to be free of an illegal seizure.  John Doe #1 and John Doe #2 knowingly, intentionally, and/or recklessly violated Thorn's rights under the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution as secured by 42 U.S.C. §1983.

79.    As a result of these Constitutional violations, Thorn suffered the damages identified in Paragraph 31.

## COUNT V – *MONELL* LIABILITY

### (Against New Castle County)

80.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

81.    Defendant New Castle County, a governmental entity, operates the NCCPD.

82.    Defendant NCC has a policy or custom of condoning illegal search and seizures in violation of the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution.  While the NCC was successful in Couden, both Couden and Gladney involved claims against members of the NCCPD for conducting invalid searches and seizures.

83.     These cases, which resolved ten and nine years ago, respectively, show the type of conduct that occurred with Thorn has been ongoing.  NCC therefore has a policy or custom of ignoring and/or condoning these Constitutional deprivations by its police officers.

84.     Similarly, because of the length of time of these types of Constitutional deprivations by its officers, NCC has a policy or custom of failing to train and/or supervise its police officers. Such failure to train and/or supervise demonstrates the NCC's deliberate indifference to the potential deprivations of Constitutional rights of the citizens of New Castle County, such as Thorn.

85.     Defendant NCC has a policy or custom of condoning the use of excessive force in violation of the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution.  Couden (where NCC was successful), Barbour, and Brown all involved claims against members of the NCCPD for using excessive force.

86.     These cases, which have resolved and/or are ongoing, show the type of conduct that occurred with Thorn has been ongoing.  NCC therefore has a policy or custom of ignoring and/or condoning these Constitutional deprivations by its police officers.

87.     Similarly, because of the length of time of these types of Constitutional deprivations by its officers, NCC has a policy or custom of failing to train and/or supervise its police officers. Such failure to train and/or supervise demonstrates the NCC's deliberate indifference to the potential deprivations of Constitutional rights of the citizens of New Castle County, such as Thorn.

88.     Thorn has a right to be free of an illegal search, an illegal seizure, and excessive force.  The policy and/or custom of NCC directly led to the violations of the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution as secured by 42 U.S.C. § 1983.

89.    As a result of the policies and/or customs of NCC, Thorn suffered the damages identified in Paragraph 31.

## COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against John Doe #1 and John Doe #2)

90.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

91.    John Doe #1 and John Doe #2 acted with wanton negligence when they illegally entered Thorn's residence.

92.    John Doe #1 acted with wanton negligence when he then drew his firearm and pointed it up the stairs.

93.    When Thorn saw the red laser dot from John Doe #1's firearm coming up his stairs, Thorn feared for his safety.

94.    When Thorn came around the corner to the stairs, Thorn was in the zone of danger of being shot by John Doe #1.

95.    Thorn suffered mental stress and anxiety as a result of John Doe #1 and John Doe #2 illegally entering his residence and John Doe #1 pointing his firearm up the stairs and subsequently at Thorn.

96.    As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against John Doe #1 and John Doe #2)

97.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

98.     John Doe #1 and John Doe #2 engaged in extreme and outrageous conduct when they, in violation of the Constitutions of the United States and Delaware, entered Thorn's residence without a warrant, probable cause, reasonable suspicion, or exigent circumstances.

99.     John Doe #1 and John Doe #2 illegally entered Thorn's residence intentionally and/or recklessly.

100.    The intentional and/or reckless actions of John Doe #1 and John Doe #2 caused extreme emotional distress and fright to Thorn.

101.    John Doe #1 further intentionally and/or recklessly pointed his firearm up Thorn's stairs causing extreme emotional distress and fright to Thorn.

102.    As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

### COUNT VII – ASSAULT

### (Against John Doe #1 and John Doe #2)

103.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

104.    John Doe #1 and John Doe #2 illegally entered Thorn's residence with a warrant, probable cause, reasonable suspicion, or exigent circumstances.

105.    John Doe #1 and John Doe #2 illegally entered Thorn's residence intentionally and/or recklessly.

106.    John Doe #1 and John Doe #2 intended to cause an imminent apprehension of harmful or physical contact to Thorn when they entered his residence.

107.    John Doe #1 further intentionally and/or recklessly pointed his firearm up Thorn's stairs causing extreme emotional distress and fright to Thorn.

108. John Doe #1 intended to cause an imminent apprehension of harmful or physical contact to Thorn.

109. When Thorn came out of his office and saw the laser dot coming up the stairs, when he turned the corner to see the firearm pointed at him, and when he saw the two officers in his living room, Thorn was in imminent apprehension of harmful or offensive contact.

110. As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

## COUNT IX – WANTON NEGLIGENCE

### (Against John Doe #1 and John Doe #2)

111. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

112. John Doe #1 and John Doe #2 illegally entered Thorn's residence with a warrant, probable cause, reasonable suspicion, or exigent circumstances.

113. John Doe #1 and John Doe #2 illegally entered Thorn's residence intentionally and/or recklessly.

114. John Doe #1 and John Doe #2's entry into Thorn's residence was in violation of the Constitutions of the United States and Delaware.

115. John Doe #1 further intentionally and/or recklessly pointed his firearm up Thorn's stairs causing extreme emotional distress and fright to Thorn.

116. The actions of John Doe #1 and John Doe #2 demonstrate wanton negligence in entering Thorn's residence and (as for John Doe #1) pointing his firearm up the stairs and at Thorn.

117. As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

## COUNT X – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against John Doe #3)

118.   Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

119.   John Doe #3 engaged in extreme and outrageous conduct when he taunted Thorn inviting him into the "fucking street" as if to fight him.

120.   John Doe #3 intentionally and/or recklessly taunted Thorn.

121.   The intentional and/or reckless actions of John Doe #3 caused extreme emotional distress and fright to Thorn.

122.   As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

## COUNT XI – ASSAULT

### (Against John Doe #3)

123.   Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

124.   John Doe #3 intended to cause an imminent apprehension of harmful or physical contact to Thorn when he taunted him inviting him into the "fucking street" as if to fight him.

125.   John Doe #3's taunts put Thorn in imminent apprehension of harmful or offensive contact.

126.   As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

## COUNT XII – WANTON NEGLIGENCE

### (Against John Doe #3)

127.    Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

128.    John Doe #3 was out in the street when John Doe #1 and John Doe #2 entered Thorn's residence.

129.     John Doe #3 knew or should have known that John Doe #1 and John Doe #2 entered Thorn's residence illegally in violation of the Constitutions of the United States and Delaware.

130.    John Doe #3 saw Thorn in his yard asking in animated fashion why officers were in his house and pointing guns at him.

131.    John Doe #3 saw John Doe #1 and John Doe #2 walking away from Thorn without Thorn detained or in custody.

132.    John Doe #3 knew or should have known that Thorn was not the person for whom they were looking.

133.    John Doe #3's action of taunting Thorn by inviting him into the "fucking street" as if to fight him was the result of wanton negligence.

134.    Alternatively, John Doe #3's action of taunting Thorn by inviting him into the "fucking street" as if to fight him was outside the scope of his employment.

135.    As a direct and proximate result, Thorn suffered the damages identified in Paragraph 31.

WHEREFORE Plaintiff Timothy Thorn respectfully requests this Court:

A.      Grant judgment in his favor and jointly and severally against New Castle County, John Doe #1, John Doe #2, and John Doe #3;

B.      Award him compensatory damages as he can prove;

C.      Award him costs and attorneys' fees for prosecuting this action;

D.      Award him pre- and post-judgment interest; and

E.      Grant such other relief as the Court deems proper.

                                              **JACOBS & CRUMPLAR, P.A.**

                                               /s/ Patrick C. Gallagher
                                              Patrick C. Gallagher, Esq. (DE Bar 5170)
                                              Alexis N. Stombaugh, Esq. (DE Bar 6702)
                                              750 Shipyard Drive, Suite 200
                                              Wilmington, DE  19801
                                              (t) (302) 656-5445
                                              (f) (302) 656-5875
                                              pat@jcdelaw.com
DATE:  July 14, 2021                          *Attorneys for Plaintiff*

19